## Frederick Hofecker *v.* Fannie Pfeil, Appellant.

*Deed—Misrepresentation—Equity—Cancelation of deed—Rights of third persons—Husband and wife.*

A court of equity will decree the cancelation of a deed where it appears that before the deed was executed the vendee procured a list of judgments against the vendor and the vendor in response to an inquiry said there were no other liens against the property than those on the list, although he knew of the existence of another judgment against a prior owner which was a lien upon the property; and the vendor's wife, who knows of such representations, though not of the lien, is not such a stranger to the transaction that the deed cannot be set aside as against her, she having immediately after the execution of the deed entered judgment against her husband on a judgment note which she had held for two years.

Argued Oct. 10, 1899. Appeal, No. 101, Oct. T., 1899, by defendant, from decree of C. P. Cambria Co., Dec. T., 1897, No. 2, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity to cancel a deed.

The facts appear by the opinion of BARKER, P. J., which was as follows :

We agree with the findings of fact announced by the learned referee in his opinion, and the facts so found are sufficient under the law to authorize a decree of rescission of the contract and cancelation of the deeds referred to in the bill, on the ground of fraud and misrepresentation, and, it further appearing that great hardships will result unless the court intervenes, the relief prayed for must follow.    The learned referee has found as facts that the plaintiff and John Pfeil met at the office of the justice of the peace to consummate an agreement for the exchange of lands, the latter receiving a deed for a city property in exchange for a deed for a farm in Richland township.    The justice, at the instance of Hofecker, had obtained a list of judgments against John Pfeil, and the latter, in the presence of the justice and others, informed Hofecker, in response to an inquiry and after an examination of the list of judgments, that there were no others against the property than those on the list, whereas, as a matter of fact, there was a judgment against a former owner of the property which was then a lien on it amounting to about $270, and he finds that John Pfeil knew, at the time he made this statement, of the existence of this judgment.    We have carefully examined the testimony in respect both to the alleged statement of Pfeil and as to his previous knowledge of the existence of the judgment and find that the proof was amply sufficient to establish both these facts.

John Pfeil being dead, Frederick Hofecker is not a competent witness to testify that the misrepresentation above referred to induced him to purchase, but the circumstances of the case are sufficient to supply that necessary element, since this representation was a material one and made in response to an inquiry. We quote from Kerr on Fraud and Mistake, p. 74 : " It is not, however, necessary that the representation should have been the sole cause of the transaction ; it is enough that it may have constituted a material inducement.    If any one of several statements, all in their nature more or less capable of leading the party to whom they are addressed to adopt a particular line of conduct, be untrue, the whole transaction is considered as having been fraudulently obtained, for it is impossible to say that the untrue statement may not have been precisely that which

turned the scale in the mind of the party to whom it is addressed." The facts already stated seem to us to be sufficient to warrant a decree, but, in addition to this, we have the fact that it was agreed, in the presence of the justice of the peace, between Pfeil and Hofecker, that the former would remove all the liens· from the property—and the list showed three judgments and one mortgage—some by payment and others by transfer to the property that day conveyed by Hofecker to Pfeil. This had not been done up to the time of the filing of the bill, excepting as to the mortgage, and Pfeil therefore obtained a deed for an unincumbered farm, and Hofecker obtained a deed for the city property incumbered to the amount of between $600 and $700. It is probably the law that the failure on the part of Pfeil to clear the property of incumbrances, as he agreed to do, would not be sufficient of itself to warrant a decree of rescission of the contract unless it formed such a part of the contract that his failure to comply with it would be a fraudulent misrepresentation in the view of a court of equity. The agreement to remove the liens here seemed to form part of the contract, and it is at least an element that we may take into consideration along with the other misrepresentations as to the liens against the property. The defendant's counsel, while contending that there is not sufficient in the case to warrant the court in making the decree prayed for, especially contends that no decree can be made to affect the rights of Fanny Pfeil as a lien creditor of her husband, John Pfeil, she having entered a judgment for the sum of $1,400 against him subsequent to the transaction referred to above—which judgment is, therefore, a lien on the property conveyed to her husband by Hofecker—under the principle that the right of a party to set aside a transaction on the ground of fraud has no place as against a bona fide purchaser for a valuable consideration without notice, or against a person whose rights have intervened in the mean time, as is contended in the case of Fanny Pfeil. But, under the circumstances of this case, she cannot be regarded as such a stranger that she would be protected under the principle invoked. We can readily see that she, or any one else who had extended credit to John Pfeil on the strength of the conveyance from Hofecker, without any notice of fraud, could not be affected by any decree to be made in this proceeding, and on proof of the

existence of such rights no decree would be made. Mrs. Pfeil had held her judgment note for about two years prior to the transaction recited above without entering it against the city property of John Pfeil. She was present at the justice's office and knew of the arrangement between the parties as to the giving of deeds free of incumbrances, and the proposed method of freeing the city property of liens. She did not know of the existence of the judgment against the former owner of the property, but the referee found as a fact that she was present when her husband represented that the only liens on the property were those found on the list at that time. The purpose of such proceedings as these is to restore the parties to the same situation they were in before the contract sought to be set aside was made, and to restore the parties in this suit to their former situation would place her in no worse position than she was then. In fact, her husband having paid off a mortgage of $500 and upwards, which was a lien at that time against the city property, she would be in a better position by reason of its removal as a prior incumbrance, and if we were to decline to make the decree prayed for it would work such a hardship to the plaintiff to her material advantage that it seems abhorrent to all principles of equity. Had she not acquiesced in the transaction and in the representations made by her husband, and in his agreement to clear the city property of liens, and had she refused to sign the deed, then, on the entry of her note, there would have been some $1,300 or $1,400 of prior incumbrances. Whether the property was of such a value that her judgment would have been reached on a sale, we are not informed, but by acquiescing in this transaction her husband obtained a property unincumbered, and against which she promptly entered her judgment, thus making it secure. To hold that she shall not thus profit by the transaction is not holding her as a surety or guarantor for her husband in his agreement to remove the liens as argued, nor is it an attempt to hold her on the warranty in the deed. It is simply decreeing that her husband cannot have the fruits of a conveyance obtained by misrepresentation amounting to fraud, and that she is not such a stranger to the transactions that she can share in the fruits of the same transaction. It is not necessary, for the purposes of this opinion, that we should consider the other matters of defense set up before the referee,

as they have already been considered by him and his conclusions have been supported by an abundance of authority.

The prayer in the bill is that the deed of plaintiff to John Pfeil be decreed fraudulent, void, and of no effect, and that a decree be made against defendants, directing them to execute a reconveyance, free of the incumbrance of the lien of Fanny Pfeil. It seems to us that the only decree necessary is that the deeds be delivered up for cancelation, which restores the parties to the situation they were in before the contract was made and deeds exchanged, so far as the legal title to the property is concerned, and this would seem to us to leave the judgment of Mrs. Pfeil a lien against the city property, it having been entered before the death of her husband. But this is a matter we are not required to pass upon at the present time, only mentioning it because of the fact that a difference of opinion seems to exist between the counsel of the respective parties on this point. We are not disposed to follow the suggestion of the referee as to the disposition of costs, as it seems to be a proper case to impose at least a portion of the costs on the plaintiff, as he had it within his power to have protected himself by having a search made of the records to see if there were liens against former owners, and also to see that the agreement of Pfeil to remove all judgments was enforced by requiring that it.be simultaneously with the delivery of his deed.

It is ordered, adjudged and decreed that the contract for the exchange of lands made and concluded January 9, 1897, by and between Frederick Hofecker and John Pfeil, be and it is hereby rescinded with the same effect as if it never had been made, and that the deed of John Pfeil and Fanny, his wife, dated January 9, 1897, recorded in the recorder's office for Cambria county, in deed book, vol. 110, p. 22, to Frederick Hofecker, and also the deed of Frederick Hofecker and Margarette, his wife, dated December 21, 1896, recorded in the same office, in vol. 110, p. 186, be delivered up to the prothonotary of this court for cancelation within twenty days, and further, that the docket costs, including $75.00, to be taxed as a fee for D. L. Parsons, Esq., referee, be paid, one half by the plaintiff and one half by the defendants, and that each party pay the costs of witnesses subpœnaed by him.

1899.]        Assignment of Errors—Opinion of the Court.

A bill of exceptions was sealed for defendant.

*Error assigned* was the decree of the court.

*W. H. Ruppel,* with him *A. H. Coffroth, John E. Gasteiger, Charles C. Greer* and *F. P. Martin,* for appellant.— A promise is not in itself a false and deceitful representation. Performance may have been intended when the promise was made. If so, there was no wrong done when the title passed out of the grantor, and certainly a failure to perform the promise cannot revest a title after it has been divested : Grove v. Hodges, 55 Pa. 504; Hickman v. Fisher, 2 Pearson, 43; Farnsworth v. Duffner, 142 U. S. 43.

The record of the judgment was constructive notice to Mr. Hofecker, and he is bound by that notice in this proceeding : Wright v. Wright, 12 Pa. C. C. R. 238.

Where a right is made dependent upon the payment of money or delivery of property, the general rule is that an action cannot be maintained to enforce such right, without proof of a tender of the money or property: Long's App., 92 Pa. 171; Richard's App., 100 Pa. 51; Triscuit's App., 13 W. N. C. 57.

The Married Woman's Act expressly provides that the wife cannot be held as guarantor or surety for her husband: Chambers v. Spencer, 5 Watts, 406 ; Hatz's App., 40 Pa. 209 ; Dean v. Shelly, 57 Pa. 426 ; Kline v. Caldwell, 91 Pa. 140 ; Trullinger v. Charles, 129 Pa. 289 ; Paul v. Kunz, 188 Pa. 504.

*Henry Wilson Storey,* for appellee.

PER CURIAM, October 23, 1899 :

There appears to be no error in this record, of which the defendant has any just reason to complain. The decree was fully warranted by the facts correctly found by the learned referee and approved by the court. All that can be profitably said in relation to the questions involved will be found in the clear and satisfactory opinion of the learned president of the common pleas. On that opinion, the decree is affirmed and appeal dismissed at appellant's costs.